JAMES H. OGDEN & others *vs.* MARGARET McHUGH
& another.

Bristol.    October 26, 27, 1896. — January 7, 1897.

Present: HOLMES, MORTON, LATHROP, & BARKER, JJ.

*Conveyance in Performance of Ante-nuptial Contract — Mutual Mistake —
Equity.*

If a man and a woman, whose husband had not been heard of for twelve years, execute an ante-nuptial contract, and subsequently go through the ceremony of marriage in the belief that her husband is dead, each having an equal knowledge of the facts upon which such belief is founded, and he conveys property to her, through a third person, in performance of the ante-nuptial contract, and they live together as husband and wife until his death five years afterwards, his heirs at law cannot maintain a bill in equity to have the conveyance to her set aside, upon discovering the existence of the former husband.

BILL IN EQUITY, filed in the Superior Court on February 7, 1895, by the heirs at law of Henry Ogden, against Margaret McHugh and the Union Savings Bank, to recover certain real estate alleged to have been acquired by the first named defendant through conveyance from Ogden by fraud and mistake. Hearing before *Richardson*, J., who found the following facts.

In 1868 the defendant, Margaret McHugh, married James McHugh in Fall River, and they afterwards lived together there at short intervals until 1873. Henry Ogden, the father of the plaintiffs, who were his children by a deceased wife, knew Mar-

garet and James McHugh, and was present at their marriage, and knew of their living together as husband and wife for short intervals until 1873. In that year James deserted Margaret; he left Fall River, she remaining there. She saw him once in 1875 or 1876, but soon after that lost all knowledge of him; and, believing him to be dead, in 1888 became engaged to marry Ogden, then a widower. She and Ogden executed an ante-nuptial contract, by which he agreed to make such provision for her out of his after acquired property as to him might seem just and proper, and she agreed to accept such provision as a substitute for dower and all other interest which she might have in his estate. The ceremony of marriage between Margaret and Ogden took place on January 4, 1888, and they thereafter openly lived together as husband and wife in Fall River until his death, on March 7, 1893.

When the ante-nuptial contract was executed, and when the ceremony of marriage between Margaret and Ogden was performed, they both believed that James McHugh was dead, and remained in that belief down to the time of the death of Ogden, though in fact James McHugh was and is now living, and no divorce between him and Margaret was ever had.

Before the ceremony of marriage between Margaret and Ogden, the question of whether James was then living was discussed by them, and by their friends, and they sought the advice of a priest; but the judge did not find that Margaret made any fraudulent statements to Ogden, or intentionally made any false statements, or concealed anything which she knew in respect to whether James was living or not, to induce him to marry her. In fact, he knew about James's desertion of her, and of his disappearance from Fall River, and had, in a general way, a knowledge of all the facts that she had in respect to his disappearance and supposed death.

Ogden owned and was in possession of certain property other than that described in the bill at the time the ceremony of marriage between him and Margaret was performed, and he gave such other property to his children, all of whom are plaintiffs in this suit.

Pursuant to the ante-nuptial contract, Ogden caused the estate, which was the estate which he then and down to the time

of his death occupied, but which he acquired after January 4, 1888, to be conveyed by mesne conveyances, through Christopher Hughes as intermediary merely, to Margaret. There was no consideration to Ogden for the conveyance other than the desire to fulfil his ante-nuptial contract, and his belief that she was his lawful wife, and, laboring under this mistake, he made the conveyance.

It was about two years after the death of Ogden that she. learned that James McHugh was living. The defendant bank, in 1893, loaned to Margaret $1,000, and took as security a mortgage made by her on the estate in question in good faith, and in the belief that she was the legal and equitable owner of the premises. The plaintiffs admit that this mortgage is a valid encumbrance on the estate.

The plaintiffs requested the following ruling: " If the real estate in question was conveyed by Henry Ogden to Margaret, under the belief that she was his wife, as his wife, pursuant to the ante-nuptial contract annexed to the plaintiffs' bill, and without any consideration other than the supposed marriage, then, even if Margaret was not guilty of actual fraud, there has been such a failure of consideration as entitles the plaintiffs to recover." This ruling was refused.

Upon the above facts, the judge dismissed the bill, with costs ; and, at the request of the plaintiffs, and with the consent of the defendants, reported the case for the consideration of this court. If the plaintiffs are not entitled to any relief, the decree dismissing the bill is to be affirmed ; otherwise, such decree to be entered as justice requires.

*A. J. Jennings & J. M. Morton, Jr.*, for the plaintiffs.

*J. W. Cummings*, (*C. R. Cummings* with him,) for the defendant Margaret McHugh.

BARKER, J. The decree dismissing the bill was right. If the plaintiffs, as heirs at law of their deceased father, could under any circumstances maintain a bill to set aside a deed which he had made in performance of a contract into which he had entered under a mistake, they have no better right than he would have if living. When he made the contract, and when he performed it by causing the land to be conveyed to the defendant Margaret McHugh, he knew of the fact that the only

evidence of the death of her former husband was his absence from the year 1876 until the time of the marriage in 1888. He took the chance that the former husband was yet alive, and he was equally responsible with the defendant for all the consequences to her and to himself resulting from the marriage ceremony and his living with her as his wife. While there was no marriage, there was during the years from the ceremony in 1888 to his death in 1893 the exact condition of things which, in view of the possibility that the husband was alive, he must have contemplated when he made the contract. This situation gave him the companionship and services of the defendant, with no obligation to compensate her therefor. *Cooper* v. *Cooper*, 147 Mass. 370. It gave him the possibility of having by her legitimate issue. Pub. Sts. c. 145, § 14. *Glass* v. *Glass*, 114 Mass. 563. On the other hand, it is now impossible to place her in the condition in which she would have been but for her acts done in performance of the contract. Neither the supposed husband nor his administrators or heirs have lost the benefit which he expected to derive, that she should have from his estate nothing except such property as he should see fit to give her in his lifetime. She can get nothing from his estate either by way of compensation for her years of service or of a distributive share.

While there was a mutual mistake in that both parties believed that the husband was dead, both knew fully upon what that belief rested, and what the consequences would be if a marriage ceremony followed by cohabitation as husband and wife should occur, and it should appear that the former husband was in fact alive. It would be unjust, under such circumstances, to take away what she received in return for acts which were of value to the other contracting party, which were a detriment to herself, and which only failed being complete performance on her part through the operation of a rule of law which all parties had in mind, and which they all had good reason to suppose was not applicable, because of facts which each knew and relied upon equally with the other.

*Decree affirmed.*