NANCY W. JAMES, Appellant, v. MAE L. FAIRALL et al.,
Appellees.

EVIDENCE: Conclusion—Law and Fact. A question which permits
a witness to marshal his uncommunicated knowledge, both com-
petent and incompetent,. draw conclusions of law and fact there-
from, and present his deduction to the jury must be condemned
as calling for a conclusion.

> PRINCIPLE APPLIED: ''You may tell the jury whether
> *advancements* that had been made to you would be in *excess* of
> your *share* of your mother's estate.'' *Held* to call for the con-
> clusion of the witness (1) as to what constituted an ''advance-
> ment'' and the value thereof, and (2) as to the value of the
> mother's estate, it not being even shown that he knew or was
> competent to speak of values.

WITNESS: Transaction with Deceased—Removal of Disqualifica-
tion—Collusion. (1) ''No party to any action or proceeding
. . . nor (2) any person interested in the event thereof . . .
shall be examined as a witness in regard to any personal transac-
tion or communication between such witness and a person at the
commencement of such action deceased . . . against the ex-
ecutor . . . legatee or devisee, etc.'' (Sec. 4604.)

> PRINCIPLE APPLIED: Will contest. Grounds, undue influ-
> ence. One Geo. W., a son of testatrix, was a devisee, the will
> reciting he should receive certain lands worth about $1,800 and
> that testatrix had obligated herself for him for about $1,000,
> which amount the executor should determine and all should be
> treated as an advancement and deducted from his share. Plain-
> tiff made Geo. W. a party defendant. He answered disclaiming
> any interest in the estate. (He would be the gainer if the will
> was set aside.) Mistrial. On re-trial plaintiff desired to use
> Geo. W. to prove a talk he had with testatrix *''in regard to the
> making of her will.''* Plaintiff dismissed as to Geo. W. and
> called him as witness, and to show lack of interest in the action
> asked ''if the advancements which his mother had made to him
> would exceed his share in the estate, in absence of a will.'' No
> offer was made to then show the value of the estate or that

Geo. W. could speak of values. *Held,* Geo. W. was not rendered competent because:

(1) The question asked was improper as calling for a conclusion and there was no showing when he was offered as a witness, that he was "not interested in the action."

(2) The "dismissal" appeared to be "colorable"—a collusion between plaintiff and Geo. W. to make him a witness in violation of the statute.

(3) The "disclaimer" filed by Geo. W. did not necessarily obliterate his "interest in the action," if it should later appear he had such.

**WITNESS: Disqualified when Offered—Subsequent Facts Removing Disqualifications—Re-Offer.** If a witness appears to be disqualified when offered, and his testimony is thereby excluded, the appearance of facts in the later stages of the trial removing the disqualifications does not render erroneous the original order excluding the testimony. There should be a re-offer of the excluded witness.

**WITNESS: Competency—Difficulty to Show.** The mere fact that it may be difficult to determine the competency of a witness is no reason or excuse for not doing so.

PRINCIPLE APPLIED: So held on question whether a party was "interested in an action" and thereby incompetent to testify to personal transaction with a deceased.

**WILLS: Declarations of Legatees—Admissibility.** Where there are several devisees, whose interests are several and not joint, the declarations of one devisee are not admissible on the question whether the will was executed under undue influence.

**TRIAL: Form of Questions Indefinite.** It is not error to exclude answers to questions indefinite as to the matters called for, and as to the person to whom reference is made.

**WILLS: Declarations of Legatees—Admissibility.**

**WILLS: Disinherited Heir—Financial Condition.** The financial condition of the husband of a disinherited heir may be inquired into as bearing on the question whether the heir was provided for.

**WILLS: Undue Influence—Fraud—Submission of Issues.** In a will contest where the plea blended the issue of undue influence and

fraud, and there was no fraud except such as related to undue influence, the submission of the question of the latter was all-sufficient.

*Appeal from Johnson District Court.*—HON. JOHN F. TAL-BOTT, Judge.

TUESDAY, OCTOBER 6, 1914.

REHEARING DENIED TUESDAY, JANUARY 19, 1915.

AN action at law to set aside probate of will of Ellen J. Fairall, deceased, on the ground of fraud and undue influence. Trial to a jury. Verdict and judgment for defendants. Plaintiff appeals.—*Affirmed.*

*McDonald & Olsen,* for appellant.

*O. A. Byington* and *Wade, Dutcher & Davis,* for appellees.

PRESTON, J.—The case has been here before. *James v. Fairall,* 154 Iowa 253. A general statement of the case may be there found. Some of the points relied upon on this appeal are disposed of by the opinion on the former appeal. The writer is of opinion that the evidence was not sufficient to take the case to the jury, but that question and some others are foreclosed by the determination of the first appeal.

The first and principal error relied upon is in the refusal of the trial court to admit the testimony of George W. Fairall as to a conversation with the testatrix regarding the making of her will. George W. Fairall is a son of the testatrix, a devisee under the will, and an heir in the absence of a will. He was made a party defendant upon the bringing of the action. He and a brother, W. W. Fairall, filed an answer separate from the other defendants, in which they aver that they have no interest in the controversy and have no objection to the will being set aside. After the reversal in the supreme court, and when the case

1. EVIDENCE: conclusion: law and fact.

came on for trial below, the plaintiff dismissed as to George W. He was placed upon the witness stand and asked to detail conversations with the testatrix. Objection of incompetency was made to the witness, when it was suggested to the court that such an answer had been filed, and that the case had been dismissed as to George, and that an entry had been made dismissing him. Counsel for appellant contend that, having disclaimed interest in the action, and having been dismissed as a party, he was rendered competent to testify to personal transactions with the testatrix. In order to show that the witness had no interest in the action, counsel sought to introduce evidence as to alleged advancements made to said witness by the testatrix, in order to show that the advancements would exceed his interest in the estate, provided the will was set aside and he inherited as an heir. Objection was made to the question in regard to this matter and sustained by the court. The objection was, among others, that it called for a conclusion of the witness. We think it was so and that the objection was good on that ground. The question was:

Q. "Mr. Fairall, you may tell the jury and court whether advancements that had been made to you, if any had been made, would be in excess of your share of your mother's estate, in the absence of a will?"

The objection was, because it asked for a personal communication or transaction and a legal conclusion and was not competent.

An answer to this question would involve the question as to the value of his mother's estate, also the value of advancements made to him. There was no foundation whatever laid to show that the witness was competent to speak of values, and the question clearly called for the conclusion of the witness. Furthermore, at the time this witness was on the stand there was no offer to show the value of the estate by this witness, or that he knew the value, or the value of the advancements.

The will recites that she had conveyed to said George W. Fairall and his children certain land of the value of about $1,800.00 and become obligated for him to the amount of about $1,000.00; she directed that the real estate should be deemed an advancement; that the executor ascertain the amount of her obligation on behalf of her said son, and that said obligation be deemed an advancement, and to be so considered in the distribution of the estate, and provided that such advancements should be deducted from the devise to said George W.

It seems that at the trial, counsel for plaintiff relied on an alleged statement by an attorney for defendants in his opening statement to the jury, that George had received advancements in excess of his share. The record does not so show. The opening statement was not taken down, nor did the court make any finding of such alleged fact. There is simply the assertion of plaintiff's counsel that such was the fact.

The contention in this court is, that because the case had been dismissed, George was no longer a party; that he was not interested because he had received advancements in excess of his share under the will, or under the law, and that he would be estopped, after filing such answer, from claiming any interest in the estate upon distribution. Under the terms of the will, George would be the gainer if the will was set aside, and he undoubtedly so believed when he filed his answer. The circumstances that George filed such an answer, and that thereafter the plaintiff dismissed as to him and then called him as a witness, indicate collusion between plaintiff and said George, and the trial court may have so considered it. If this is the fact, then the dismissal by plaintiff would not, under the authorities, have the effect of making his evidence competent. We do not understand the theory of the trial court in permitting a dismissal as to said defendant George, and the reason therefor does not appear in the record. Ordinarily, all the heirs should be made parties to a will contest, and in this case the appellees objected to the case pro-

2. WITNESS: transaction with deceased: removal of disqualifications: collusion.

ceeding until George was again brought in so that further litigation and contest might be avoided. This was denied, but the defendants have not appealed.

The will was admitted to probate June 1, 1907, and the dismissal as to George was had on November 29, 1912, or more than five years after the will was probated, and it is possible that the theory of the trial court was, that the five years allowed for setting aside a will having elapsed, George could not thereafter contest.

It should be said that, after this witness left the stand, and after plaintiff had rested her case, there was evidence introduced by the defendants tending to show the value of the estate and the amount of claims and encumbrances. But the witness, George W., was not thereafter recalled to the stand and again asked as to the advancements received by him.

3. WITNESS: disqualified when offered: subsequent facts removing disqualifications: re-offer.

It is true that he was called in rebuttal and, as soon as he was called, the defendant objected to his testifying because he had violated a rule of the court in excluding witnesses from the room. This would be error, probably, if the appellant was in position to raise the question. We are of opinion that, under such circumstances, the witness should be allowed to testify, and the jury to judge the weight of his testimony in view of the fact that he had heard other witnesses. Perhaps the witness could be punished for contempt if it could be shown that he had intentionally or wilfully violated the order, but the question as to the refusal to permit his testimony on that ground has not been argued. The trouble at this point is, that the witness was simply called in rebuttal, and no question was asked, no offer to prove was made, and it is not now claimed, even if it could be now done, that they proposed to ask the same question that they had asked in chief. The proposition is, whether the ruling of the trial court was correct at the time it was made. If so, there would be no error, even though afterwards evidence was

introduced from which it might be determined that he had no interest in the estate. *O'Mara v. Jensma,* 143 Iowa 297.

As to the alleged estoppel, that must be pleaded. There is no such plea in this case, and probably could not be as to this matter.

If the will should be set aside, and there should be sufficient property so that George W. would be entitled to something as heir, after deducting advancements to him, if any,

4. WITNESS: competency: difficulty to show.
it may be that, under such circumstances, after filing an answer disclaiming any interest in the controversy, or estate, he would be estopped from claiming any interest therein upon distribution, but it would be necessary for the other heirs to plead an estoppel, and we do not now know that such a plea would be tendered; so that, to hold the evidence of this witness competent on that ground, we must assume now that such an estoppel would be pleaded and sustained. It is said by counsel for appellees that there was no such issue in this case as to the advancements, and that, to sustain the position of counsel for appellant, it would be necessary to enter upon the trial of the issue of advancements to said heir and of the value of the estate; that in order to determine the competency of George W. Fairall as a witness, it would have been necessary to have received evidence as to the value of the estate of Ellen J. Fairall and to receive evidence as to the various moneys and property given to George W. during her lifetime, and the circumstances under which it was given, in order to determine whether it would be considered an advancement. It is quite true that there was no issue of that kind in the case upon trial, but the question presented as to the testimony of George W. Fairall was as to whether he was a competent witness, and the fact that it would be difficult to determine that question is not a reason for not doing so. Objection to the competency of the witness having been made, it must be decided. *Campbell v. Campbell,* 130 Ill. 466 (22 N. E. 620; 6 L. R. A. 167, 169).

The question was one for the court, and the competency of the witness may be determined by examining him on his *voir dire* or by extrinsic evidence. *Campbell v. Campbell, supra.*

It should have been stated, in connection with what we have said about there being no offer to prove the value of the share of George W., at the time or before he was on the stand, that appellant claims that they did make an offer to show by the testimony of one Harry Fairall that advancements were made to George W. in excess of his share, but we think the record does not sustain the appellant in this claim. What they now claim was such offer to prove by Harry Fairall, was while witness W. H. James was on the stand, and their statement is:

"We have a witness to show the value of the estate and value of said advancement and show that George W. Fairall is disclaiming any interest in this estate and is not a party to the suit, we expect to prove that by Harry Fairall."

It was not shown that the witness was in court, and he was not, in fact, produced by the plaintiff. The court made no ruling and did not deny the right of plaintiff to so prove, had they put the witness on the stand. In fact, Harry Fairall was used as a witness by the defendants. This so-called offer was after George W. Fairall had left the stand and several other witnesses had been examined.

Appellant cites: *Campbell v. Mayes,* 38 Iowa 9; *Conger v. Bean,* 58 Iowa 321; *Clinton Savings Bank v. Underhill,* 115 Iowa 292; *Culbertson v. Salinger,* 131 Iowa 307; to the general effect that a party is competent to testify as to personal transactions with a deceased if the action has been terminated as to him, as by dismissal, discontinuance, or default and judgment.

In *Campbell v. Mayes,* an administrator was made a party and it was found that he had no interest in the action and was not a necessary party; the action was dismissed as to

him, and the court held that he was no longer an adverse party.

In *Conger v. Bean,* one of the defendants withdrew his answer and entered a stipulation for judgment, and was dismissed as a party to the action; it was held that thereafter his testimony was competent, and it was held that he had no further interest in the event of the suit or in the litigation because his rights had been determined.

Substantially the same thing is true in *Bank v. Underhill.*

In the *Culbertson v. Salinger* case, it is said that such would be the holding under a stipulation for judgment by one defendant, but where he still remained in the case by virtue of a cross-petition against his co-defendant, the administrator, in which he asserted a cause of action affecting the subject matter of the main suit, he was thereby rendered incompetent.

The dismissal of the suit by the plaintiff as to George W. would, perhaps, remove the ground for holding him incompetent because he was a party; but the statute, Sec. 4604, includes not only a party to the suit, but persons from, through or under whom any such party or interested person derives any interest, etc., so that a person may be interested, under this section, even though he is not a party to the action.

In *Campbell v. Campbell,* 6 L. R. A. 169, *supra,* a dismissal as to an executor or trustee who had not qualified, and who filed a disclaimer of any interest in the estate, it was held that he had the right to disclaim and dismiss, and that thereafter he became a competent witness. This is unlike the interest of an heir, as is George W. Fairall, who takes, if at all, upon the death of the ancestor.

And it has been held that, if there is an attempted removal of interest, as by assignment, if it is colorable, or done through collusion, for the purpose of qualifying as a witness, that he is still incompetent. 30 *Am. & Eng. Enc. of Law,* 1007, 1008.

It is held in *Ivers, Admr., v. Ivers,* 61 Iowa 721, that a mere disclaimer of an interest by an heir is not sufficient to

render his testimony competent, unless the estate is insolvent, which will not be presumed.

In *Frye v. Gullion*, 143 Iowa 719, two of the heirs sought to render their testimony competent by mutual disclaimer of any interest in the estate, and by presenting claims equal to the entire estate, and it was held that their disclaimers did not have the effect of rendering them competent witnesses, where the disclaimers were so framed as to insure the success of certain heirs and, if possible, defeat others, and left it open for the disclaiming parties to share in the estate.

In the case at bar, the witness, George W. Fairall, was interested in the estate, in the event that the will was set aside. unless it was established that the advancements made to him exceeded his interest in the estate, and, as we have stated, at the time he was on the stand, such showing was not made, nor was there any offer to so show. There is a presumption in the first place that the witness was competent. 40 Cyc. 2352. And the burden would be on the defendants to show incompetency, but this was done *prima facie* by the showing that he was a son and an heir, and because of the provisions of the will; this was not overcome by plaintiff. There was no showing by plaintiff that at the time George W. was a witness his interest in the estate would be wiped out by the advancements, nor was there any offer at that time to so prove. Such prima-facie showing of incompetency may of course be overcome by evidence. *Anthony v. Sturdivant*, 56 So. Rep. 571.

"Where, in a will contest, a person who is both a legatee and an heir at law is offered as a witness by contestants and rejected by the surrogate, and there is no evidence as to whether the witness' interest as heir or as legatee is of most value, it will be assumed, in support of the surrogate's ruling, that the interest of the witness would be promoted by defeating probate." 40 Cyc. 2352; *In re Lasak*, 131 N. Y. 624 (30 N. E. 112).

Such is the situation here because of the fact that the

evidence does not show, or did not at the time George W. was on the witness stand and the ruling made, that the advancements to him would exceed his share in the estate.

It may be, under the record, that at the end of the trial, when the evidence was all in, the court could have said from the evidence that it would be doubtful whether George had any interest in the estate, either under the will or as an heir; but, as before indicated, the question now is, whether the ruling was correct when it was made. As the record stood at the time of the ruling, the witness was not shown to be competent, and there was no error in so holding.

What we have said disposes of the assignments of error Nos. 1 and 2.

We shall notice the other assignments briefly. The third assignment is in regard to refusing the evidence of W. W. Fairall as to whether his sister Maud ever said anything to him about persuading his mother to make a will cutting out Mrs. James. The argument under this assignment is, that it calls for a declaration constituting a part of the *res gestae,* and that the interests of the devisees in this case are joint and that, under such circumstances, the admission of one is admissible against the others. This witness was permitted to testify to a conversation in which he said Maud told her mother if she did not make a will cutting Nan James out she would leave home, and that when Maud made this statement the mother acted nervous and cried some, and that in response to that the mother said—Nannie hadn't always treated her right, but that she always said she wouldn't make a will cutting any of her children out; they should share and share alike.

5,7. WILLS:
declarations of
legatees:
admissibility.

Then this question was asked:

"Did your sister Maud ever say anything to you about asking you to persuade your mother to make a will cutting Mrs. James out?"

And the objection was, "incompetent, calling for a con-

versation with one of the parties to this suit, which is not binding on any of the others, can't prove that fact by the declaration of these parties, whether before or after, can't bind the other heirs by that."

The objection was sustained. There was no offer to prove that he heard the sister say anything of that kind, or if he did, what the conversation was, and the question does not indicate whether the sister Maud did or did not say anything to him on that subject, or what the conversation was. So far as we know, the witness would have answered, no. We ought not to reverse to get such an answer, or to experiment to find out whether the sister did ever say anything on that subject. If the witness had answered, yes, and the conversation had then been inquired about, it would call for an act or declaration of Maud as against the other legatees.

A similar statement or declaration seems to have been held inadmissible on the former appeal of this case, and it was there held that a similar matter was not a part of the *res gestae,* and that the interests of the legatees were not joint. This seems to answer fully this complaint.

The testatrix died April 9, 1907. Plaintiff went to her mother's home two or three days before the death of testatrix, and as a witness plaintiff was asked, Q. "How did the defendants treat you while you were out there just prior to your mother's death?" And the objection to this question was sustained. The will was made October 31, 1905, and it is said by appellees that treatment of plaintiff by the heirs after the making of the will is not material.

6. TRIAL: form of questions indefinite.

In *Betts v. Betts,* 113 Iowa 111, 116, where such testimony was admitted, it was said that the ruling could be sustained on the ground that the testimony tended to show feelings of one of the heirs towards his brother, and that this shed some light on the issue of undue influence. If the trial court had permitted this answer, it could be sustained, perhaps, on the same ground. But the witness was permitted to testify:

"I saw the defendants when I went in, and they did not say anything to me."

And there is other evidence in the case tending to show that the relations between plaintiff and her mother, and perhaps some of the defendants, were not cordial since about the year 1904. But here, again, we are met with the proposition that there was no offer to prove what the treatment was, other than the witness had already stated. All six of the heirs were defendants; the petition alleges that four of them were guilty of exercising undue influence. The form of the question does not indicate which of the defendants are referred to. We do not know what the answer would have been, or what plaintiff proposed to prove on this subject, and, as before stated, we will not speculate on what the answer might have been.

W. H. James, the husband of plaintiff, was asked as to a conversation between S. W. Fairall, one of the heirs, and the plaintiff as to an admission of S. W. Fairall that he led 5,7. WILLS: declarations of legatees: admissibility. his mother, the testatrix, to believe that Mrs. James furnished the money to the wife of one of the heirs in a divorce proceeding. What we have said in regard to the testimony of W. W. Fairall as to admissions and declarations of one of the legatees determines this point.

Mrs. George Fairall, the wife of one of the heirs, under the statute, was incompetent to testify as to declarations of the testatrix that certain of the heirs were trying to induce her to make a will cutting Mrs. James out.

8. WILLS: disinherited heir: financial condition. W. H. James, the husband of plaintiff, was called as a witness for defendant, and asked:

Q. Now in 1905 tell the jury what different pieces of real estate you owned here in Iowa City?

And, over objection by plaintiff, the court permitted an answer, stating that they had the right to take into consideration the general condition of the heirs.

The answer was:

A. "Why I own a store there on Clinton Street, and I own two residences up there on College. I did own a property on Johnson Street, which was sold about three years ago to Clarence Koser for $4,250.00"

Plaintiff moved to strike the answer in regard to the sale of the property because it was since the mother's death, and it was overruled. One objection to the ruling is, that it is claimed in argument that this has reference to the value of certain property in 1909, and the argument is that if such evidence is competent at all, it should be limited to not later than the execution of the will for the purpose of showing the condition at the time of the making of the will to explain the provisions of the will, but. we do not understand the record to refer to his property in 1909, and we have set out all of it. The will was executed on October 31, 1905; the codicil purports to have been executed December 15, 1905, and the inquiry as to the property of plaintiff's husband had reference to the year 1905, and what he then owned. The fact that some of it was sold in 1909, while perhaps not material, could not possibly prejudice plaintiff. We think the evidence was competent for the purposes indicated by the court.

Appellants cite *Stutsman v. Sharpless,* 125 Iowa 335, where it was held, substantially, that where a will is assailed as unreasonable, evidence of the financial condition of those having claims upon the testator's bounty is admissible, but that this does not include a mere expectancy not likely to have been known or contemplated by the testator. In that case, evidence as to the value of the estate of a grandfather of proponents, living in Ohio, was admitted. In the instant case, the testimony was not admitted for the purpose of showing that the plaintiff might at some time receive a share of her husband's property, but as tending to show the financial condition of the plaintiff and her husband; that is, as to whether the daughter was provided for, and how.

Finally, it is said the court erred in not submitting to the jury, as a separate issue, the question of fraud. The petition alleged "that defendants, S. W. Fairall, Harry Fairall,

9. WILLS: undue influence: fraud: submission of issues.

Maud Fairall and Frank Fairall, beneficiaries under the purported will, by fraud and undue influence, procured the execution of said will."

There was no evidence of any fraud, except such alleged acts of said defendants as would bear upon the question of undue influence, and counsel for appellant have not pointed out any other fraud than the alleged undue influence. They do point out certain testimony, but, as stated, this was included in the question of undue influence. The question of undue influence was fully submitted to the jury under instructions of which appellant does not complain.

Under the circumstances of this case, we are unable to see that there was any occasion to submit the question of fraud to the jury, except as the same was included in the question of undue influence. There is no reversible error, and the judgment of the district court is—*Affirmed.*

Ladd, C. J., Evans, and Weaver, JJ., concur.