MRS. K. O. SANDERS v. W. H. RAGAN, ADMINISTRATOR OF W. W. HINSHAW.

(Filed 6 December, 1916.)

### 1. Contracts—Quantum Meruit—Marriage—Fraud—Husband and Wife.

Where one having a living lawful wife induces another woman to go through the marriage ceremony with him in the innocent belief that she is becoming his wife, and by keeping her in ignorance of the fact of his marriage she lives with him, lends him money, and performs valuable services for him without expecting remuneration or compensation, she is entitled to recover from his estate, by reason of the fraud practiced upon her by him, upon a *quantum meruit*, the value thereof over and above the benefits she may have received in clothes, maintenance, etc.

### 2. Contracts—Implied—Wrongdoer—Indebitatus Assumpsit.

An action of *indebitatus assumpsit* is dependent largely upon equitable principles, and in the absence of special contract, and unless in contravention of public policy, it will usually lie wherever one has been enriched

or his estate enhanced at the expense of another under circumstances that in equity and good conscience call for an accounting by the wrong-doer.

### 3. Contracts—Implied—Tort—Waiver—Indebitatus Assumpsit.

When one's property has been wrongfully converted by fraud or deceit, the owner is allowed to waive the tort and sue on an implied contract under the equity of *indebitatus assumpsit*.

CIVIL ACTION to recover for work and labor done and money advanced by plaintiff to defendant's intestate while they lived together as man and wife, tried before *Cline, J.,* and a jury, at March Term, 1916, of GUILFORD.

The allegations and proof on the part of plaintiff tended to show that on or about 20 September, 1913, she was induced to go through the forms of marriage with defendant's intestate, and lived with him as his wife, fully believing she was such, till the date of his death in February, 1915, when she ascertained that, during all the time intestate had a lawful wife still living, resident elsewhere; that during said period and association plaintiff advanced him $200 in money, to be used in building a home, and, in addition, had rendered him various services of value, in waiting on him in his last sickness, etc., and that said money, etc., was reasonably worth $680.

There was denial of liability on the part of defendant, and, on general issue of indebtedness, the court submitted to the jury the question of money advanced and the amount of the same, and, in reference to the claim for work and labor, charged the jury, among other things, in substance, that plaintiff could not recover if she had knowingly and voluntarily lived in illicit relationship with defendant during said time, and further, "That if 'plaintiff went through the form of marriage with W. W. Hinshaw, deceased, honestly believing she was marrying him, he knowing that he had a living wife, and, therefore, could not marry—if she went into his house under those circumstances and resided with him in the apparent relationship of husband and wife, and she served him, labored for him, and those services and those labors had a value to him; that it turned out afterwards that she was not his wife, could make no claim upon his representative or his estate after his death—in such case the law would raise for her benefit an implied promise to pay her for what the jury might find her services to be reasonably worth over and above, that is, in excess of, what benefits by way of food and clothing and keep and maintenance she received from him, if any you should find."

There was verdict for plaintiff for $422. Judgment on verdict, and defendant excepted and appealed.

*Clifford Frazier for plaintiff.*
*Roberson, Barnhart & Smith, King & Kimball for defendant.*

HOKE, J.   There is conflict of authority on the question presented in this appeal, but we are of opinion that the decisions in support of plaintiff's claim have the better reason and that the judgment in her favor should be affirmed.   True, the position is fully recognized in this jurisdiction that no recovery can be had for services rendered when they are given and received without expectation of pay.   *Guano Co. v. Bennett,* 170 N. C., 345, citing *Winkler v. Killian,* 141 N. C., 578; and *Prince v. McRae,* 84 N. C., 675.   But the principle should have no application to this record, where, on the facts as accepted by the jury, the plaintiff being without default, has rendered services of value in ignorance of the essential relevant facts and was induced thereto by the fraud and wrong of the intestate.   In such case we think that the general equitable principles of *indebitatus assumpsit* should apply and the cases which so hold should be approved as controlling.   *Fox v. Dawson's Curator,* 8 Martin (La.), 94, 4th Reprint, 47; *Higgins v. Breece,* 9 Mo., 497; *Heckham v. Heckham,* 46 Mo. App., 496; *Boardman v. Ward,* 40 Minn., 399; Keener on Quasi Contract, p. 318.

Two of the cases opposing this position, *Franklin v. Waters,* 33 Md., 322, and *Cooper v. Cooper,* 147 Mass., 370, and cited in several text-writers of recognized merit as upholding the better view, have been subjected to intelligent criticism in Mr. Keener's work, and the decisions rendered in these cases are expressly disapproved.   Keener on Quasi Contract, pp. 321-22-23-24-25.

Speaking to the decision in *Franklin v. Waters,* a case where a slave, who had been freed by the will of his former owner, was kept in ignorance of the fact and thereby made to serve for some length of time as a slave, by the heir and successor of the testator, and recovery on a *quantum meruit* was denied, the author says: "The reason why a man who does not intend to charge for services rendered is not allowed to recover compensation therefor is because the gift of a thing is inconsistent with a sale or barter thereof, and, therefore, one to whom a thing has been given is not doing anything inequitable in refusing to pay therefor.   The principle, therefore, clearly has no application to a case where the plaintiff has been induced by fraud to give services to the defendant which the defendant knew he had no right to claim, and which he also knew would not have been rendered but for the belief of the plaintiff in the defendant's right thereto."   And, in reference to *Cooper v. Cooper, supra,* a case as to a claim for services exactly similar to the one before us, in which a recovery was also denied, on a *quantum meruit,* the Court holding that plaintiff's

remedy should have been in tort for the deceit, it is said, among other things: "It is submitted with all deference that a different result should have been reached in this case. It is true that the intestate's accepting the plaintiff's services was an incident of a previous wrong, and not an independent tort. But it is also true that the intestate, by accepting the services, wrongfully enriched himself at the plaintiff's expense; and while if he had received nothing of value from the plaintiff, the plaintiff could only have sued for breach of promise to marry, or in tort for deceit, yet it is submitted that when he, because of his tort, enriched himself, the plaintiff, if she saw fit to sue, not for damages, but simply for compensation to the extent that the defendant had profited by his wrong, should have been allowed to do so." And speaking further to this decision: "If instead of receiving the services of plaintiff, the defendant had, in the exercise of his supposed common-law marital rights, reduced to possession choses in action belonging to the plaintiff, it hardly seems possible that a court would hold that as the right to sue in tort had been lost by the death of the intestate, the plaintiff could recover against his estate the money received in extinguishment of choses in action, which in fact belonged to the plaintiff, and which the defendant unlawfully appropriated to his own use. Had the plaintiff in this case surrendered to the defendant money or other chattels to which the defendant asserted a right because of his marital rights as husband, it does not seem possible that a court would hold that because of the loss of the right to sue in tort by the death of the intestate, no claim could be asserted against his estate for the value so received by him. And yet in point of principle it is submitted that it is impossible to distinguish between the receipt of money or other property by the defendant and the receipt of services. The plaintiff, whether she conferred a benefit on the intestate by rendering services or by delivering him money or other personal property, in either case parted with a right *in rem* under a mistaken supposition, induced by the fraud of the defendant, that the defendant was entitled thereto." A line of reasoning which gives full support to plaintiff's right to recover for money advanced, in the principal case, and to our minds equally sustains her recovery for services rendered and received by intestate to his pecuniary advantage. The action of *indebitatus assumpsit*, as stated, is dependent largely on equitable principles, *Mitchell v. Walker*, 30 N. C., 243, and, in the absence of a special contract controlling the matter and unless in contravention of some public policy it will usually lie wherever one man has been enriched or his estate enhanced at another's expense under circumstances that, in equity and good conscience, call for an accounting by the wrongdoer.

Our decisions uphold recoveries when money not justly due has been paid under a mistake of fact. *Simms v. Vick,* 151 N. C., 78.

When a man's property has been wrongfully converted or obtained by fraud or deceit, the owner is allowed to waive the tort and sue on contract, *Stroud v. Ins. Co.,* 148 N. C., 54; *White v. Boyd,* 124 N. C., 177; and we see no reason for withholding the application of the principle from the present case, where it is established that valuable services were rendered and received and plaintiff was induced thereto by the wrong and fraud of defendant.

There is no error, and the judgment is affirmed.

No error.