ESTATE OF FOX: WOLF, Respondent, vs. Fox, Administratix, Appellant.

*September 13—October 10, 1922.*

*Executors and administrators: Claims against decedent: Services
by woman supposing herself to be decedent's wife: Good
faith: Illicit relationship: Recovery for services: Evidence:
Question for jury.*

1. In an action for personal services and for the rental value of
   a house furnished to deceased, the question whether plaintiff
   in good faith believed she was married to deceased is for
   the jury.
2. A woman who voluntarily and knowingly lives in illicit rela-
   tions with a man cannot recover on an implied contract for
   services rendered to him during the period of such relation-
   ship.
3. Though a woman in good faith believes she is married to a
   man but in fact is not, owing to his fraud or to a mistake of
   fact, she can recover for services rendered to him during the
   supposed marriage on the doctrine of *assumpsit*. [Whether
   a similar holding would be made in case both parties in good
   faith, but mistakenly, entered into a marriage, is not decided.]
        ESCHWEILER and ROSENBERRY, JJ., dissent.

APPEAL from a judgment of the circuit court for Dodge
county: C. M. DAVISON, Circuit Judge. *Affirmed.*

Plaintiff filed a claim against the estate of Valentine Fox,
deceased, claiming that she believed herself lawfully wedded
to him, and while occupying the relation of wife to him she
rendered services for him and gave him a house in which
to live, and, among other things, asked for compensation
for the value of her personal services and for the rental
value of her house. The issues were submitted to a jury
and it found (1) that Valentine Fox, for the purpose of in-
ducing the plaintiff to marry him, represented to her that he
was free to marry her; (2) that plaintiff in entering into the
marriage with him relied upon such representation as true;
(3) that she had a right to rely upon such representation;
(4) that she did not know before his death that he had no

legal right to marry her; (5) that during the entire period from November, 21, 1914, until January 30, 1921, she continued under the belief that he had the legal right to marry her; (6) that the value per week to her of the services lost by her by reason of entering into the marriage contract with him was three dollars; and (7) that the reasonable value per month of the house which she furnished him was six dollars.    The court entered judgment for plaintiff for the services and rental for six years in the sum of $1,445.52, and the defendant appealed.

For the appellant there were briefs by *Stephens & Morrison* of Columbus, attorneys, and *F. W. Hall* of Madison, of counsel, and oral argument by *Mr. Hall.*

For the respondent there was a brief by *Lueck, Clark & Lueck* of Beaver Dam, and oral argument by *Martin L. Lueck.*

VINJE, C. J.    The verdict is vigorously assailed by appellant because it finds that plaintiff entered into the marriage with Fox in good faith.    The principal grounds for the argument are that the parties entered into a civil contract of marriage before a notary public and witnesses and were not married in the usual manner; that she had had exhibited to her the decree of divorce which Mr. Fox had secured from his first wife, which decree was one from bed and board and not an absolute one, and that she had been told by the former wife and daughter that she was living in adultery with Mr. Fox.

Since the law recognized as valid a civil contract of marriage at the time this was entered into (*Becker v. Becker*, 153 Wis. 226, 140 N. W. 1082), it cannot be held error for the jury to find that there was nothing suspicious or wrong in entering into a lawful contract of marriage. The claim that since plaintiff saw the judgment for divorce from bed and board she must have known it was not an absolute divorce as Mr. Fox represented it to be is not

persuasive. Were she a party to the instrument or versed in law the claim would rest upon more substantial grounds. But she was neither. It is true the instrument concerned her vitally, but she may well have believed that it was an absolute divorce. It recited that it was a divorce "from bed and board forever," and she may well have thought that that was the correct legal phraseology for an absolute divorce. She testified that at the time she married Mr. Fox she did not know there were different kinds of divorce judgments; that she first learned that fact after his death. In *Thomas v. Thomas,* 88 Wis. 88, 59 N. W. 504, it was held that a woman was not chargeable with knowledge that a decree of divorce obtained without the requisite period of residence in the state was void. Upon the evidence we think the jury were warranted in holding that she did not know the legal effect of the divorce from bed and board, and she was not under the circumstances, as a matter of law, chargeable with knowledge thereof.

The claim that plaintiff was informed that she lived in adultery with Mr. Fox rests upon conflicting testimony, and we cannot disturb the jury's conclusion as to where the truth lies.

The question presents itself whether or not the plaintiff under the verdict rendered is entitled to recover for services and rent of house.

Courts are practically unanimous in holding that when a woman voluntarily and knowingly lives in illicit relations with a man she cannot recover on an implied contract for services rendered him during the period of such relationship. 29 L. R. A. n. s. 787. Some courts hold that she can recover on an express contract if it does not form a part of the agreement for illicit relations. *Ibid.* On the question here presented as to whether a woman, who in good faith believes she is married to a man when she is not, owing to his fraud or to a mistake of fact, can recover for services rendered him during the supposed marriage, the

courts do not agree.    Massachusetts holds that she cannot, on the ground that since no compensation was contemplated by the woman or by the parties the law can imply no agreement to pay.    *Robbins v. Potter,* 11 Allen (93 Mass.) 588; *Cooper v. Cooper,* 147 Mass. 370, 17 N. E. 892; *Ogden v. McHugh,* 167 Mass. 276, 279, 45 N. E. 731.    Other courts hold that she can recover on an implied contract when she in good faith believes herself to be his wife.    *Higgins v. Breen,* 9 Mo. 493, 497; *Sanders v. Ragan,* 172 N. C. 612, 90 S. E. 777, L. R. A. 1917B, 681; 29 L. R. A, N. s. 788; Keenan, Quasi-Contracts, 682.    The latter holdings are based on the ground that, since his estate has been enriched at her expense, equity demands that she shall be made whole.    The doctrine of *assumpsit* is applied.    It is inferred from the nature of the transaction, and the supposed husband is held to have assumed to pay because in point of law and equity it is just that he should pay.    We think the latter doctrine is the more just and logical and adopt it in this case.    Here it is found that the supposed husband by express fraudulent representations induced plaintiff to enter into the illicit relation.    It is therefore just and equitable that his estate should reimburse her for the actual money value she has added thereto.    Whether the court would so hold in a case where both parties in good faith, but mistakenly, entered into a marriage need not now be decided.

There can be no question but that an action based on the implied promise to pay for services and rent survives and that the statutes of limitation do not bar the claim for the last six years.    That is all the court allowed.

*By the Court.*—Judgment affirmed.

ESCHWEILER, J. (*dissenting*).    The lengthy claim filed by respondent in the county court and certified to the circuit court upon her demand for a jury clearly and emphatically stated a cause of action for a tort.    It was in substance that during the two months prior to November 21, 1914, the plaintiff, a business woman then about

fifty-two years of age, divorced from her first husband in 1900, was wooed and won by V. H. Fox, now deceased, by means of false representations that his divorce from bed and board in 1913 was valid and no impediment to the marriage contract of November, 1914. It also alleged that Fox, fraudulently and maliciously intending to damage and wrong her, to humiliate and disgrace her, to obtain her aid and services and to enrich his estate; maliciously and fraudulently commenced to pay her attentions and to win her affections; that she relied upon such representations, believed them and that he loved her. That to carry out his wicked and fraudulent scheme he induced her to enter into the contract of November, 1914. She also alleged subsequent cohabitation and her belief in there being a legal relationship of husband and wife. That the falsity of the representations was not ascertained until after Fox's death.

That on account of her belief in and reliance upon such false and fraudulent representations made prior to the contract she turned over her earnings to him, gave him a home, did his laundry, nursed and cared for him, and furnished him board. That on account and as a result of such false and fraudulent representations, the resulting contract and subsequent cohabitation, she lived, from the date of such contract to his death, in a false and degraded position, has suffered mental and physical pain, has been deprived of the benefits springing from a legal marriage, defeated of her dower rights, and that decedent and his estate were wrongfully enriched at plaintiff's expense and to her damage. Not only was a tort action so plainly stated but the special verdict submitted the appropriate questions for just such a tort action.

She necessarily and concededly rendered the services for which she recovers herein because, and only because, of the contract of November, 1914, otherwise the relationship would be such as to defeat any possible right to recover. She could not base any right to recover for services during the

latter years except' upon reliance on the supposedly legal contract of 1914 and subsequent cohabitation in continued reliance thereupon. Her possible good faith in the matter could not, under the law, alter the situation in which the parties were placed, and no length of time of subsequent cohabitation could change the status of the parties from the meretricious one which this was and continued to be. If a prosecution for adultery had been instituted, plaintiff's mistake, if any, as to the law or lack of intention to commit such an offense would, it would seem under the authorities, have been no defense. *State v. Goodenow,* 65 Me. 30; *Comm. v. Elwell,* 2 Met. (43 Mass.) 190 (cited with approval in *Comm. v. Sacks,* 214 Mass. 72, 74, 100 N. E. 1019); *State v. Whitcomb,* 52 Iowa, 85, 87, 2 N. W. 970; *Geisselman v. Geisselman,* 134 Md. 453, 107 Atl. 185, 188; 2 Corp. Jur. 16; 1 Ruling Case Law, 644.

Assuming the findings of the jury to be correct, a gross fraud was perpetrated upon her in 1914 from which the entire subsequent relationship of the parties must necessarily be traced. To the cause of action so founded the statute of limitations was properly pleaded, and under the undisputed facts the period under which she could obtain the remedy for such fraud in 1914 had expired prior to the death of the decedent. For such a cause of action it is entirely immaterial that she may not have discovered it until after the statutes had run.

I think the situation comes squarely within repeated decisions of this court, particularly such as *Stahl v. Broeckert,* 170 Wis. 627, 176 N. W. 66, where the statute of limitations defeated the rights of an aged widow who was fraudulently induced to sign a certain note and mortgage; *Darling v. Nelson,* 171 Wis. 337, 176 N. W. 847, where sisters were alleged to have been fraudulently induced by their brothers to execute a conveyance of certain interest in real estate; *Sander v. Newman,* 174 Wis. 321, 181 N. W. 822, where the complaint was because of alleged

fraud in collecting and appropriating secret profits by one set of associates in a real-estate transaction; and in many cases cited in those opinions.

*Cooper v. Cooper,* 147 Mass. 370, 17 N. E. 892, is a case almost identical in facts with the one here, and relief was denied, as well as in *Graham v. Stanton,* 177 Mass. 321, 58 N. E. 1023, where services were rendered by a child to one falsely representing that he had legally adopted such child.

I am further convinced from the record in this case that the plaintiff, having possession of a copy of the decree of divorce between decedent and his first wife with ample opportunity of ascertaining its nature, having been divorced herself, of business experience, of mature age, should be held bound by the notice of its nature appearing on its face or so easily ascertainable, and that the finding of the jury in that regard should have been set aside.

I am authorized to state that Mr. Justice ROSENBERRY concurs in the foregoing dissenting opinion.