IN RE ESTATE OF MICHAEL FILI.

HELEN RUSSELL, appellee, v. ESTATE OF MICHAEL FILI, appellant.

No. 47527.

(Reported in 40 N.W. 2d 286)

DECEMBER 13, 1949.

Whicher & Davis and Crary, Munger & Crary, all of Sioux City, for appellant.

Day & Dunkle and Lowell C. Kindig, all of Sioux City, for appellee.

SMITH, J.—The important questions here concern the extent, if any, to which claimant was disqualified as a witness under the "dead man's statute," section 622.4, Code, 1946. The proceeding was based on her claim for services allegedly rendered by her, mistakenly believing she was decedent's legal wife. The claim was resisted by the administrator of decedent's estate (Joseph Fili, his son) and by the intervenor-guardian of decedent's incompetent widow, Ruth Fili. It does not appear, however, that the widow is financially interested in the proceedings.

The answer admitted there was a purported marriage ceremony between claimant and decedent, Michael Fili, November 25, 1936, and that said marriage had previously, in the estate proceedings, been adjudged illegal because he had a wife living and undivorced. It seems undisputed the wife was in a mental institution at all times pertinent to the litigation. Trial was to the court—jury waived.

The trial court first awarded claimant one half the net estate

after "all proper allowances and dower interest" were set aside to the widow and "all proper claims and costs" were paid. Thereafter, upon motion by defendant-administrator ("for judgment notwithstanding") the court set aside the first award and allowed claimant $3000. The administrator has appealed.

The administrator assigns error in permitting claimant to testify to personal conversations and transactions with decedent, and urges insufficiency of proof of the amount and value of work performed and of proof that it was neither gratuitous nor unpaid for.

Claimant advances various propositions: 1. That the "dead man's statute" does not apply since claimant was not seeking to recover on contract, express or implied; 2. that the administrator by his testimony opened the door to testimony by claimant; 3. that even though some of claimant's testimony should be held improperly admitted and were to be stricken, there would still be ample evidence to support the allowance; 4. that the burden was not on her to prove either that the services were not gratuitously rendered or had not been paid for; and, 5. that there was sufficient competent testimony as to the amount and kind of service rendered to support the allowance.

I. Some contention is made here that the proceeding was in equity or equitable in its nature. We find no merit in this argument. It was a probate proceeding on a claim. We think it was triable at law, and was so tried. Jury was first demanded, then waived, the court ruled on objections to evidence, and changed the original award by a ruling on a motion "for judgment notwithstanding." Probate proceedings are inherently at law. In re Estate of Jenkins, 201 Iowa 423, 426, 205 N.W. 772; McIntosh v. Brown, 159 Iowa 41, 43, 139 N.W. 926. The fact that the doctrine of "unjust enrichment" is considered in determining the amount of recovery does not change the nature of the proceeding. While there is reference to equitable relief in claimant's prayer we do not think the allegations of the claim require equitable treatment.

II. It is also argued the "dead man's statute" does not apply here since claimant is seeking recovery for "unjust enrichment" and not "on the basis of a contract, express or implied in. fact," and, therefore, she was a competent witness to testify con-

cerning her transactions and communications with decedent. Even if the premise were conceded we know of no such limitation on the operation of the "dead man's statute." No case is cited here to support the proposition. The language of section 622.4 is broad and comprehensive: "No party to *any* action * * * shall be examined as a witness in regard to *any personal* transaction or communication * * *." (Italic supplied.)

The fact, if it be a fact as stated by claimant, that all our cases (involving claims for services rendered) in which the statute was applied were cases where the rejected testimony was offered to establish an express or implied contract, is not controlling. Of course services are almost invariably rendered pursuant to contract, express or implied, and cases involving them usually run into the problem presented by the "dead man's statute." But it does not follow the statute would not apply to other cases.

██ Furthermore, we think claimant's case here does ultimately rest on the theory of implied contract, that is, contract implied in law or constructive. 17 C.J.S., Contracts, section 4; City of Pella v. Fowler, 215 Iowa 90, 96, 244 N.W. 734, 737, and cases cited. She pleaded the value of her services and introduced evidence that could only be material as tending to prove their value. The theory of "unjust enrichment" of decedent's estate by reason of the services seems to be more a theory for measuring the value of the service than a substitute for the doctrine of implied contract creating the liability. At least some of the cases cited by claimant in support of the proposition seem to base the right of recovery, in cases similar to the instant case, upon implied contract. Sanders v. Ragan, 172 N. C. 612, 90 S.E. 777, L.R.A., 1917B 681; Wolf v. Fox, 178 Wis. 369, 190 N.W. 90, 31 A.L.R. 420. See also Roberts v. Roberts, 64 Wyo. 433, 450, 451, 196 P. 2d 361, 367, 369, citing Keener on Quasi Contracts, page 19; also see Keener on Quasi Contracts, page 321 et seq.

██ III.. The administrator testified in his own behalf and it is argued his testimony related back and acted as a waiver (under section 622.5, Iowa Code, 1946) of objections to claimant's competency. That section is a part of the "dead man's statute" and provides: "This prohibition shall not extend to any transaction or communication as to which any such * * * administrator * * * shall be examined on his own behalf * * *."

The administrator testified: "November, 1936 [the date of claimant's and decedent's illegal marriage], I lived in Boys Town, Nebraska, Father Flanagan's * * * I came to my father's house here in Sioux City, 607 Main St., no other members of my family were there at that time; a year and a half later I came there to live; Wilma [sister] came for awhile and my sister Orella." He said his sisters were aged fifteen and seventeen, respectively, both going to school. "Helen Russell was living with my father at the time * * * she was there in the house; after I came back in the winter of 1938 I lived there * * * I would say about four months." He also testified his father brought claimant along to Boys Town when he came to see his son there on at least two occasions.

The administrator testified to conversations he overheard between his father and claimant. They pertained to objections on claimant's part to the presence of the children: "I knew you had a wife, but if I had known that you were going to bring your brats home I wouldn't have gone through with the ceremony."

On cross-examination he testified he was married, had three children and that he placed one with his father while he was a patient at Oakdale Tuberculosis Sanitorium and his wife was there doing nursing. He said the child was six months old, but he denied claimant had the care of it. He said his father and twenty-six-year-old brother Tony (who had been an inmate of an institution for feeble-minded) cared for the child: "I placed him in my father's care and my brother took care of him."

He further testified (on cross-examination):

"What I am saying is that while my father was living with Helen Russell my mother was living but he wasn't divorced from her; this situation lasted about a twelve-year period of time * * *; during this time * * * she performed a little service around the house but during the time my brother was there [length of time not shown] my brother did the washing, washed the dishes, swept the floors, did the dusting and everything else."

It will be observed that only in his cross-examination did the administrator refer to matters bearing on the extent of claimant's services to decedent. It was not objected to as improper cross-examination. Had it preceded claimant's testimony it would

have made her competent to testify, as she in fact did testify: "I did the washing, ironing and cooked for him and kept his house clean. On an average the hours a day of labor in taking care of his house and clothing, etc. was from eight in the morning until eleven at night, seven days a week." See Ridler v. Ridler, 103 Iowa 470, 473, 72 N.W. 671.

But as to that part of claimant's testimony she was incompetent when she gave it. In re Estate of Kahl, 210 Iowa 903, 911, 232 N.W. 133, and cases cited. Did the subsequent testimony of the administrator waive the error in permitting her so to testify? While there is some conflict of authority the majority of this court think the better rule is stated in Keene's Extrx. v. Newton, 192 Ky. 6, 9, 232 S.W. 71, 72: "* * * plaintiff's testimony was not relieved of its incompetency by the fact the personal representative later offered herself as a witness to deny his testimony, erroneously admitted over her objections and exceptions, since by the court's error she was forced to testify whether she desired to do so or not, or else permit plaintiff's incompetent evidence to go to the jury unchallenged. To so construe the provision would defeat its evident purpose and pervert its plain language." See 70 C.J., Witnesses, section 482, page 367.

The contrary rule is adopted in Nebraska:

"Whether the testimony of the witnesses was objectionable when offered or not, such testimony was made competent through the action of the appellant in introducing evidence of the same transaction after the testimony of such witnesses had been received." Warnick v. Warnick, 107 Neb. 747, 752, 187 N.W. 51, 53, citing Bangs v. Gray, 60 Neb. 457, 83 N.W. 680; Cline v. Dexter, 72 Neb. 619, 101 N.W. 246.

The present case is perhaps stronger than the cited Kentucky case in that here the testimony of the administrator was elicited on cross-examination, which, though not objected to on that account, was hardly proper cross-examination. It was not voluntary. It has been said testimony of the adverse party relied on as waiving the statute must be brought out voluntarily by such party. 70 C.J., Witnesses, section 483, page 367.

Claimant was incompetent to testify to the nature and extent of her service rendered under a relationship to the existence of which she could not testify.

68

IV. It is argued on claimant's behalf that even though some of claimant's testimony be held to have been improperly admitted there would still be sufficient of her own and other's testimony to sustain the court's judgment. This reasoning overlooks the holding in our recent case of In re Estate of Conner, 240 Iowa 479, 492, 36 N.W. 2d 833, 841. Since there was improperly admitted testimony here bearing on the extent of claimant's services we are compelled to reverse because the proceeding is at law and it must be presumed the trial court considered such testimony. We are not permitted to try the case anew and to separate the properly, from the improperly, admitted testimony.

However, as to much of claimant's testimony we do not find that situation to exist. While, as we have already pointed out, claimant's testimony as to household services cannot be considered, she was not incompetent to testify that at the time of the purported marriage decedent owned no property and that he was unemployed; that after a short time of "odd job" employment he became employed at Swift's and remained so employed almost to the time of his death; that during that time he purchased six houses in Morningside on Sherman Avenue, six houses on Main Street between Sixth and Fifth in Sioux City and apparently "five additional houses on Main Street"; that these properties were bought on small down payments and the balance on small monthly payments out of wages and rentals; and that about two years before he died he built a grocery store.

We cannot hold this was testimony "in regard to any personal transactions or communications" with decedent. Testimony otherwise competent is not rendered incompetent because an inference of preceding personal transactions or communications may be drawn therefrom. Campbell v. Collins, 133 Iowa 152, 155, 110 N.W. 435, and cases cited; Scott v. Brenton, 168 Iowa 201, 150 N.W. 56. The witness may testify as to his own independent acts or conduct in which decedent did not participate. 70 C.J., Witnesses, section 406, note 63, page 311, citing In re Estate of Newson, 206 Iowa 514, 219 N.W. 305; Kern v. Kiefer, 204 Iowa 490, 215 N.W. 607; Secor v. Siver, 188 Iowa 1126, 161 N.W. 769, 176 N.W. 981; Hayes v. Snader, 182 Iowa 443, 165 N.W. 1041; and Kirsher v. Kirsher, 120 Iowa 337, 344, 94 N.W. 846.

The testimony as to decedent's property transactions is not shown to relate to personal transactions or communications between him and claimant. Claimant's knowledge of the facts she testified to is not shown to have been derived from decedent. We are not at liberty to infer circumstances that would render her incompetent. It was incumbent on defendant to establish claimant's incompetency. 70 C.J., Witnesses, section 494, page 375, citing In re Estate of Hoyt, 180 Iowa 1250, 1259, 163 N.W. 430; Mehlisch v. Mabie, 180 Iowa 450, 458, 160 N.W. 368; James v. Fairall, 168 Iowa 427, 148 N.W. 1029, 1033; Scott v. Brenton, 168 Iowa 201, 211, 150 N.W. 56. No effort, by cross-examination or otherwise, was made to ascertain the source of, or the manner by which she acquired, the knowledge of the matters claimant testified to and in absence of a showing to the contrary we must presume in favor of competency. James v. Fairall, supra.

V. Two witnesses (a sister and brother-in-law of Ruth Fili) testified to conversations with claimant one or two months before the "marriage" in which she expressed doubt that decedent could get a divorce. One such conversation (with the brother-in-law) was on the occasion of a casual meeting on the street. Another was at the witness' home.

Claimant did not, on rebuttal, directly deny these conversations though no question of her competency could have been raised had she done so. She merely testified emphatically both on her main case and on rebuttal she did not know before the death of Michael Fili that she was not his legal wife, and that she did not know he was not a single man. She testified to no conversation with decedent on the subject and gave no reason for her belief in the legality of her "marriage." She was not incompetent to so testify in absence of a showing her belief rested upon representations by or conversations with decedent.

The trial court expressly found "that insofar as the claimant is concerned she entered into a marriage ceremony and marriage relationship honestly and in the belief that she and the deceased were legally married." We cannot say this finding was without support.

VI. Defendant argues the burden here was on claimant to show her services were not in fact paid for. He admits the general rule that payment is a defense but argues there is, or

should be, an exception "where no books or records of the intestate's business were kept."

. No Iowa authority is cited and no case from any other jurisdiction except Theobald v. Stinson, 38 Maine 149. We find no logical basis for such an exception.

Nor are we disposed seriously to consider the contention that under this record the services of claimant should be presumed to have been gratuitous until showing is made to the contrary. The nature of the case makes any such rule inapplicable. Of course when such services are rendered there is no intention they will be paid for in wages. But the actual intention becomes immaterial when shown to have been induced by fraud or mistake. The law then implies a contract and indulges no presumption the services were intended to be gratuitous. Restatement of the Law, Restitution, section 40, page 155 et seq. See also reporter's notes on section 40, pages 25, 26, where it is stated the authorities are not in agreement but that later cases sustain the rule stated. We have no doubt as to its soundness. In fact, defendant does not question that a right of action was pleaded and could exist if proven.

VII. We notice last the contention that there is no sufficient proof of the amount and value of the services rendered. There is, however, evidence of the reasonable value of domestic labor and of service as clerk in a grocery store. It is also shown decedent had no property at the time of the purported marriage and, as found by the trial court, "during the twelve years of their relationship, through their combined efforts, considerable property was accumulated in the name of the deceased." We assume the statement is based on showing from the probate files though they do not seem to have been offered.

We have already said the theory of "unjust enrichment" pertains to the question of measurement of value of the services rendered. The contract implied here is not one of mere employment for wages. Testimony as to the amount and nature of the service and the reasonable wages therefor is competent but not controlling.

Assuming her good faith, plaintiff entered into not a contract of employment but a relationship—not indeed the one she intended but one comparable or analogous to the marriage

relation. In fixing the amount of her recovery, if any, there should be taken into account the benefit accruing to decedent's estate by reason of such relationship.

There are few, and apparently conflicting, decisions involving facts comparable to the record here. In an early Massachusetts case plaintiff was denied recovery because she based her claim upon an implied contract and it was held there could be no contract for wages implied since the parties lived together as husband and wife and that her remedy, if any, was either for breach of promise or deceit. Cooper v. Cooper, 147 Mass. 370, 17 N.E. 892, 9 Am. St. Rep. 721. We are confronted by no such procedural problem here under our practice and the pleadings. In a later Massachusetts case a deed was upheld, made in accordance with an intended antenuptial contract between parties who mistakenly married when the spouse of one was still living. Ogden v. McHugh, 167 Mass. 276, 279, 45 N.E. 731, 57 Am. St. Rep. 456.

In Sanders v. Ragan, supra (172 N. C. 612, 614, 90 S.E. 777, L.R.A. 1917B 681), it was squarely held the surviving party could recover on implied contract because of unjust enrichment, citing Fox v. Dawson's Curator, 8 Mart. (La.) 94, Higgins v. Breen, 9 Mo. 497, and Hickam v. Hickam, 46 Mo. App. 496. The same result is also reached in Wolf v. Fox, supra, 178 Wis. 369, 190 N.W. 90, 31 A. L. R. 420.

We prefer the doctrine announced in these later cases, but because of the error pointed out in Division III hereof the case must be reversed.—Reversed.

HAYS, C.J., and HALE, OLIVER, GARFIELD, MANTZ, MULRONEY, and WENNERSTRUM, JJ., concur.