Mina Stewart *v.* Joseph E. Waterman.

May Term, 1923.

Present: Watson, C. J., Powers, Taylor, Slack, and Butler, JJ.

Opinion filed February 12, 1924.

*Money Lent—Jury Question—Work and Labor—Services Rendered During Period of Illicit Relationship—No Recovery Allowable on Implied Promise—No Recovery on Express Promise If Made in Contemplation of Illicit Relation-*

*ship—Presumption as to Continuity—Inferences to Be Drawn From Conflicting Circumstances for The Jury—Instructions to The Jury—Burden of Showing Waiver of Sufficiency of Pleadings—Pleading—Accord and Satisfaction Should Be Pleaded—Plaintiff's Right to Claim That A Defense Is Not Available Under Pleadings Is Not Prejudiced by Court's Charge Outside the Issues.*

1. In an action of contract, where it appeared that the plaintiff, as the housekeeper of defendant, had maintained illicit relations with him for many years, whether a loan made by her to him under express promise of repayment was made with reference to their continued cohabitation, where that inference might be taken from the circumstances, was for the jury.

2. Where a woman knowingly and voluntarily lives in illicit relations with a man, she cannot recover on an implied contract for services rendered him during such relationship.

3. Under such circumstances, she cannot recover even though an express agreement to pay for the services is shown, if the contract was made in contemplation of the illicit relationship, but if the claim for compensation grows solely out of lawful services actually rendered and no part thereof depends on or has reference to the meretricious relationship, the law does not forbid a recovery.

4. In the absence of evidence to the contrary, there is a presumption that services commenced under a lawful contract relation, unlimited as to duration, continued so long as the services were rendered.

5. Whether the original lawful contract of plaintiff to render services for defendant as a housekeeper, continued in force unaffected by a subsequent agreement of illicit relationship between the parties was for the jury under proper instructions, where the question depended upon inferences to be drawn from conflicting circumstances.

6. In an action by a housekeeper to recover for services, an instruction that plaintiff would be entitled to recover, if her claim for wages arose solely out of lawful services actually rendered as housekeeper, and no part of the claim had reference to the illicit relationship which existed between the parties *held* not erroneous.

7. While counsel may, by conduct or agreement, limit or enlarge the issues made by the pleadings, and the course of a trial may be such as to constitute a waiver of any question respecting the sufficiency of the pleadings to make available a defense not properly pleaded, whether there has been such a waiver necessarily depends upon the circumstances of the particular case, and the burden of establishing the waiver is upon the party asserting it.

8. In an action to recover for services, where the plaintiff, during the defendant's cross-examination, introduced certain receipts written by the latter, as admissions that he then owed the plaintiff and in contradiction of his testimony, and the plaintiff neither introduced testimony with reference to such receipts nor undertook to impeach their effect as evidence of a settlement, the defendant, not having pleaded accord and satisfaction nor made any claim concerning it until the evidence was closed, was not entitled to avail himself of the receipts as a bar to the action.

9. The fact that a court's charge goes outside the case made by the pleadings does not prejudice the plaintiff's right to claim that a defense sought to be interposed by the defendant is not available under the pleadings, in the absence of anything in the record to show that plaintiff acquiesced in such defense.

ACTION OF CONTRACT to recover for personal services. Plea, the general issue. Trial by jury at the September Term, 1922, Orleans County, *Willcox*, J., presiding. Verdict and judgment for the plaintiff. The defendant excepted. The opinion states the case. *Affirmed and remanded.*

*Frank D. Thompson* and *Searles & Graves* for the defendant.

When a woman, not lawfully married to a man, lives with him as his wife, the law will imply no promise on his part to pay her for services as housekeeper during that relationship. *McDonald* v. *Fleming*, 12 B. Mon. (Ky.), 285; *Sackstaeder* v. *Kast*, 3 Ky. L. Rep. 1304, 105 S. W. 435; *Cropsey* v. *Sweeney*, 27 Barb. (N. Y.), 310; *Swires* v. *Parsons*, 5 Watts & S. (Pa.), 357; *Brown* v. *Tuttle*, 80 Me. 162, 13 Atl. 583; *Robbins* v. *Potter*,

11 Allen (Mass.), 588; *Cooper* v. *Cooper*, 147 Mass. 370, 9 A. S. R. 721; *Gjurich* v. *Fieg*, 164 Cal. 429, Ann. Cas. 1916B, 111; *Simpson* v. *Normand*, 51 La. Ann. 1355, 26 So. 266.

Where there is an express contract to pay for services as a housekeeper, the contract is valid and enforceable notwithstanding the parties live together in illicit relations, unless the contract was made in contemplation of such illicit relations. *Emmerson* v. *Botkin*, 26 Okl. 218, 138 A. S. R. 953, 29 L. R. A. (N. S.) 786; *Lytle* v. *Newell*, 24 Ky. L. Rep. 188, 68 S. W. 188; *Rhodes* v. *Stone*, 63 Hun. 624, 17 N. Y. S. 561.

Receipts "in full settlement" of plaintiff's services established *prima facie* that the plaintiff's claim had been settled. *Drown* v. *Chesley*, 92 Vt. 19.

A complaint is properly dismissed where evidence establishing a complete defense is admitted without objection, although such defense was not pleaded. *Dreunan* v. *Boice*, 19 Misc. 641, 44 N. Y. S. 394.

*W. W. Reirden* and *E. A. Cook* for the plaintiff.

The weight of the testimony of a witness who modifies his statements on cross-examination is for the jury. *Vaillancourt* v. *Grand Trunk R. R. Co.*, 82 Vt. 416, at page 426; *LaFlam* v. *Missisquoi Pulp Co.*, 74 Vt. 125.

The mere fact that the parties to a contract are maintaining illicit sexual relations does not prevent recovery on an express contract to pay for the woman's services as housekeeper, if the contract is not infected by the illegality of the relation. Pereuilhets Succession, 23 La. Ann. 294, 8 A. R. 595; *Emmerson* v. *Botkin*, 26 Okl. 218, 138 A. S. R. 953, 29 L. R. A. (N. S.) 286; 6 R. C. L., pp. 717, 718; *Potter* v. *Gracie*, 58 Ala. 303, 29 A. R. 748; note Ann. Cas. 1916B, 114.

TAYLOR, J. The plaintiff sues to recover for labor performed by her for the defendant between April, 1899, and October, 1921, and for money claimed to have been loaned the defendant in 1909. The complaint is the common counts in assumpsit and the plea, the general issue. The trial was by jury with verdict and judgment for the plaintiff. The defendant argues exceptions saved to the overruling of his motion for a

directed verdict and numerous exceptions to the charge.  The principal questions raised by the several exceptions are:  (1) Whether, on the evidence, there was a legal contract to pay for the services in question; and (2) whether the plaintiff's cause of action was extinguished by certain payments evidenced by receipts in full settlement for such services.

The defendant employed the plaintiff as housekeeper in April, 1899.  He was a widower, then 48 years old, with his father and four children in his family.  The plaintiff was a single woman then 24 years old.  It was uncontroverted that the original contract of hiring was express.  The only disagreement in respect thereto was the agreed price per week.  The duration of the service was not specified.  It fairly appeared from the plaintiff's testimony brought out in cross-examination that some five months after she commenced work for the defendant their relations had become intimate, and that such intimacy continued while the plaintiff remained in the defendant's family.  Early in October it was mutually agreed that they should go to the home of plaintiff's brother in Walden on a visit and announce on their return that they were married.  As part of this arrangement it was agreed that each should be as true to the other in every way as though they had been lawfully married.  According to this arrangement, on their return from Walden it was given out that they had been married, they introduced each other as husband and wife, and it was understood by their relatives and the community generally that they were in fact what they pretended to be—husband and wife.  In short, the plaintiff testified that she considered herself the defendant's "honest wife, if he did as he agreed to—as he promised to."

The plaintiff was paid in full for her services prior to this arrangement.  The only payments thereafter were the two payments of $100 each, which we shall have occasion to refer to later.  At least after their return from Walden the intimacy of the parties was unrestrained.  Some three years thereafter the plaintiff gave birth to a child, the issue of their illicit relations.  There was talk of a legal marriage when the plaintiff's condition was discovered but for reasons concerning which there was a conflict in the testimony there was no change in their relations.  The child was reared in the defendant's family and bore his name.  The plaintiff's mother lived with her and the

defendant about 14 years as a member of the family, doing some work but paying no board. In 1909 the plaintiff left the defendant and went to a brother's in Charleston. There was a disagreement in the testimony as to her reason for leaving. The plaintiff assigned as reasons both that the defendant would not pay her for her work, and that he drank and acted so she was driven out. During this absence the defendant paid her $100 and procured a receipt therefor, acknowledging full settlement for all services and labor. The plaintiff's evidence tended to show that the defendant repeatedly solicited her to go back to work for him, and told her if she would do so he would deed her the place where he lived. In one place she testified in answer to the question, "What did he say to you about leaving you a house for your pay up to that time?" "He told me, 'If you go back and work for me I will deed you the residence at Evansville.'" She also testified in the same connection that the defendant renewed his promise to marry her, and that, relying upon what he said, she went back. The plaintiff was away from the defendant's about two months and during a portion of that time had worked for another party. Her evidence tended to show that there were repeated talks after her return about pay for her work in which the defendant promised to deed her property therefor, but that the promises were not kept; that the last occasion was about a year before the final leaving, at which time the defendant promised to deed her the place where they were then living at Willoughby as pay for her labor during the time she had been there if she would continue to work; and that for a matter of two to five years before leaving, or, as she characterized it, before she was "turned out," disagreements occurred caused by the defendant's failure to pay for her labor. The plaintiff's evidence left the occasion for leaving the defendant in October, 1921, a matter of conjecture. She admitted in cross-examination that her conduct with a boarder led to a talk between her and the defendant in which the latter told her to vacate his house, and that she left the same day. About a week later she received from the defendant through the mail a savings bank book representing a deposit of $100 that the defendant had made for her benefit. When the plaintiff left she took with her various articles of household furniture and furnishings which the defendant claimed as his. Threats of prosecution were made,

and some of the articles were returned. ·Finally, the defendant had an interview with the plaintiff on January 10, 1922, which he referred to as a settlement, as a result of which he wrote and the plaintiff signed a writing acknowledging receipt of the one hundred dollars and other valuable considerations ''in full settle‐ ment for all labor for 23 years.''

[1]   Respecting the claim for money loaned to the defend‐ ant, the evidence clearly made that issue a jury question. The plaintiff's evidence tended to show that on her return in 1909 the defendant borrowed what was left of the $100 paid to her during her absence, expressly promising to repay it. It did not appear that the loan was made with any reference to their continued cohabitation. That it was so made might possibly be inferred from the circumstances; but if so, it would present a question for the jury. See *Robbins* v. *Potter,* 11 Allen (Mass.) 588. This item of plaintiff's specification seems to have been lost sight of in framing the motion for a directed verdict. As the plaintiff was entitled to go to the jury on this claim at least, it follows that the motion was properly overruled. However, the same questions respecting the right to recover for services were raised by exceptions to the charge and are for consideration.

[2, 3]   The parties are in substantial agreement respecting the law applicable to the facts of the case. The disagreement arises mainly with reference to the effect of the evidence. It is practically conceded that on the facts admitted by the plaintiff there could be no recovery in the absence of an express contract to pay for the services. It is a well-settled rule that a woman who knowingly and voluntarily lives in illicit relations with a man cannot recover on an implied contract for services rendered him during such relationship. Not only does the relationship as of husband and wife negative that of master and servant, but, such cohabitation being in violation of principles of morality and chastity, and so against public policy, the law will not imply a promise to pay for services rendered under such circumstances. Nor is a recovery permitted where an express agreement to pay for the services is shown, if the contract was made in contempla‐ tion of the illicit relationship. In other words, if the services for which compensation is claimed were incidental to the meretricious relationship existing between the parties, or the contract therefor was made in contemplation of such relation‐

ship, and therefore tainted by the illegal consideration, there can be no recovery. But the mere fact that the parties to the contract are maintaining illicit sexual relations does not render the contract illegal. Immoral or criminal as their conduct may be, there is no legal inhibition against their contracting with each other; and if their contract is not infected by the illegality of the relation it is held to be enforceable. That is, if the claim for compensation grows solely out of lawful services actually rendered, and no part thereof depends on or has reference to the meretricious relationship, the law does not forbid a recovery. For pertinent cases see *Robbins* v. *Potter, supra; Cooper* v. *Cooper,* 147 Mass. 370, 17 N. E. 892, 9 A. S. R. 721; *Ogden* v. *McHugh,* 167 Mass. 276, 45 N. E. 731, 57 A. S. R. 456; *McDonald* v. *Fleming,* 12 B. Mon. (Ky.), 285; *Sackstaeder* v. *Kast,* 31 Ky. L. Rep. 1304, 105 S. W. 435; *Walker* v. *Gregory,* 36 Ala. 180; *Potter* v. *Gracie,* 58 Ala. 303, 29 A. R. 748; *Brown* v. *Tuttle,* 80 Me. 162, 13 Atl. 583; *Gjurich* v. *Fieg,* 164 Cal. 429, 129 Pac. 464, Ann. Cas. 1916B, 111; *Simpson* v. *Normand,* 51 La. Ann. 1355, 26 So. 266; *Swartz* v. *Bachman,* 267 Pa. 185, 110 Atl. 260; *Henderson* v. *Spratlen,* 44 Colo. 278, 98 Pac. 14, 19 L. R. A. (N. S.) 655; *In re Fox's Estate,* 178 Wis. 369, 190 N. W. 90; *Sanders* v. *Ragan,* 172 N. C. 612, 90 S. E. 777, L. R. A. 1917B, 681; *Emmerson* v. *Botkin,* 26 Okl. 218, 109 Pac. 531, 29 L. R. A. (N. S.) 786, 138 A. S. R. 953; 6 R. C. L. 717-719; 40 Cyc. 2833; notes Ann. Cas. 1916B, 114, and 29 L. R. A. (N. S.) 787.

[4, 5] The defendant concedes that if the illicit relationship, which started after the plaintiff began work for him and before they went to Walden, had continued "in its then form," and he had not paid for the services, the plaintiff could have recovered for them on the express contract. His claim is that after the visit to Walden their relations changed—that thereafter they were living together as husband and wife, and that the uncontradicted evidence shows that the services were performed as part of, and incident to, such illicit relations. The trial court deemed it a question of fact whether on the evidence the arrangement entered into in October, 1899, was in lieu of the previous wage agreement, whereby the contract for hire was terminated, or was an independent understanding entered into without reference to the wage agreement. Accordingly, the jury were instructed that the plaintiff could not recover if they found

that the wage agreement was terminated and mutually understood to have ended with the beginning of the husband and wife arrangement; and that the parties had lived together since October, 1899, under the latter arrangement independent of and as a substitute for the wage agreement. On the other hand, they were instructed that, if they found the parties lived together after the Walden trip mutually understanding that the wage agreement was still in force, and that the illicit relationship agreed upon in October constituted no part of the services for which compensation was sought to be recovered, that is, if plaintiff's claim for wages arose solely out of lawful services actually rendered as housekeeper, and no part of the claim had reference to the illicit relationship which existed between the parties, then she would be entitled to recover. In the same connection the jury were told that, where a man employs a woman upon an agreed wage per week to render services as a housekeeper, and the parties afterwards live together as husband and wife and have illicit intercourse, if such relation was not contemplated by or a part of the original agreement to work for wages, or later substituted for the original agreement, the contract for services can be enforced notwithstanding such illicit relations.

The pertinent exceptions to the charge are the basis of the claim that the court erred in permitting the plaintiff to go to the jury because on the evidence the original wage agreement was, as a matter of law, terminated by the October arrangement and the conduct of the parties thereafter in living together as husband and wife. The case presents a very unusual situation and one not entirely free from doubt, but the difficulties relate to questions of fact, and not of law. The original contract on which the plaintiff relies was manifestly untainted, and was unlimited as to duration. The services rendered were of the same character before and after the October arrangement. In the absence of evidence to the contrary, the plaintiff would have the benefit of the presumption that the contract relation, which was lawful, continued. *Zabarsky* v. *Employers' Fire Ins. Co.*, 97 Vt. 377, 123 Atl. 520, decided at this term. It must be admitted that many of the circumstances strongly indicate that after their return from Walden the parties treated the original contract as at an end. But on the other hand there was some evidence having a contrary tendency. There was not only the plaintiff's testimony

of repeated conversations respecting the matter of wages and the defendant's promises to pay therefor, but the receipts, which were written by him, were capable of a construction favorable to the plaintiff. Moreover, the defendant when pressed to explain why he put into the last receipt the words, ''for all labor for 23 years,'' was asked, ''And you owed her for it, didn't you?'' to which he replied, ''I owed her whatever balance she says if she had been a true woman to me—the wife I considered she was.'' On the whole evidence it cannot be held as matter of law that the services sued for were performed as part of, and incident to, the arrangement admittedly entered into to conceal their illicit relations. Whether the original contract continued in force unaffected by the subsequent agreement depended upon inferences to be drawn from conflicting circumstances; hence, the question was for the jury with proper instructions.

[6] The objection to the portion of the charge referred to above ''that it permitted a recovery for services actually rendered as housekeeper regardless of the illicit relationship which was a part of the arrangement between the parties,'' is not well taken. It assumes that the charge permitted a recovery if the jury found that the October arrangement was in lieu of the original contract for services, which is unwarranted.

[7-9] The remaining exceptions are based upon the theory that the receipts signed by the plaintiff were a complete bar to a recovery for the services sued for. The question was first raised by a motion for a directed verdict, one ground of which was that the receipts show that the cause of action, if any, was extinguished before the suit was brought. Numerous exceptions to the charge were taken aimed at the same subject-matter. The receipts were produced by the defendant during his cross-examination on the call of the plaintiff, and were offered in evidence by the latter and admitted without objection. The transcript does not disclose the purpose for which the receipts were offered further than what appears from the context. The circumstances make it apparent, however, that they were offered as an admission by the defendant that he then owed the plaintiff for wages, and in contradiction of his testimony. The plaintiff produced no testimony with reference to the receipts, nor did she undertake to impeach their effect as evidence of a settlement. The plaintiff claims that the receipts were not available to the defendant as a bar to the action, he not having

pleaded accord and satisfaction. This position is well taken unless, as the defendant contends, the plaintiff waived the requirement of an answer setting up this defense by introducing the receipts in evidence. *Nichols* v. *Lane,* 92 Vt. 87, 106 Atl. 592; *Dernier* v. *Rutland Ry., etc., Co.,* 94 Vt. 187, 110 Atl. 4; *Burlington Grocery Co.* v. *Lines,* 96 Vt. 405, 120 Atl. 169; *McAllister* v. *Benjamin,* 96 Vt. 475, 121 Atl. 263; *Noyes and Hinman* v. *Pierce,* 97 Vt. 188, 122 Atl. 896; *Howard Nat. Bk.* v. *Wilson,* 96 Vt. 438, 120 Atl. 889. It is held in the case last cited that counsel may, by conduct or argeement, limit or enlarge the issues made by the pleadings, and that the course of the trial may be such as to constitute a waiver of any question respecting the sufficiency of the pleadings to make available a defense not properly pleaded. Whether there has been such a waiver necessarily depends upon the circumstances of the particular case; and the burden of establishing the waiver is upon the party asserting it. It must be held that the defendant has failed to discharge this burden. The record does not disclose that the plaintiff took any position at the trial inconsistent with her present claim. Manifestly, the introduction of the receipts in evidence does not support the claim of waiver, for they were otherwise admissible. The claim of accord and satisfaction does not appear to have been made until after the evidence was closed. The fact that the plaintiff rested without undertaking to explain the giving of the receipts strongly indicates that her counsel relied upon, and had not intentionally waived, the rule of pleading. While the court's charge went outside the case made by the pleadings, that fact does not prejudice the plaintiff, at least in the absence of anything in the record to show that she acquiesced therein.

As with the other ground of the motion for a directed verdict, there being an issue for the jury on the claim for money loaned, the exception to the overruling of the motion is without merit. So far as the exceptions to the charge are concerned it is enough to say that none of them present reversible error. They challenge portions of the charge that are more favorable to the defendant than he was entitled to, being wholly outside the issues on trial.

*Judgment affirmed, and cause remanded to be proceeded with as to trustees.*