POTTER v. HOMESTEAD PRESERVATION ASSN.

[97 N.C. App. 454 (1990)]

Affirmed.

Judges PHILLIPS and LEWIS concur.

---

DOROTHY L. M. POTTER v. THE HOMESTEAD PRESERVATION ASSOCIA-
TION, HERMAN I. BRETAN, AND WILLIAM BRETAN

No. 8924SC494

(Filed 6 March 1990)

1. **Limitation of Actions § 4.3 (NCI3d)— breach of contract ac-
tion—time of accrual—action not barred by statute of limitations**

Plaintiff's action for breach of contract was not barred
by the three-year statute of limitations where the evidence
showed without contradiction that it was not until 27 August
1984 that plaintiff was notified by one defendant that her
association with defendants had been terminated; this suit was
filed on 26 August 1987; and plaintiff's cause of action did
not accrue on 31 December 1983 when she refused to accept
one defendant's undocumented "accounting" of the sale pro-
ceeds from a tract of land belonging to the parties' partnership.

**Am Jur 2d, Limitation of Actions §§ 126, 127.**

2. **Contracts § 29.2 (NCI3d)— breach of contract—lost profits
from sale of land—sufficiency of evidence**

The evidence in an action for breach of contract was suffi-
cient to support an award of $12,500 for lost profits from
the sale of a tract of land where the evidence tended to show
that plaintiff and defendants were to split profits from the
sale evenly; the property was sold for $260,000; a profit of
at least $30,000 remained for division if all of the deductions
claimed were authorized; and there was evidence that $93,000
in expenses was not authorized.

**Am Jur 2d, Damages § 913.**

3. **Quasi Contracts and Restitution § 1 (NCI3d)— real estate management services rendered — sufficiency of evidence to support award**

Evidence was sufficient to support an award of $110,000 for services rendered by plaintiff in managing, supervising, looking after, improving, and promoting a 700-acre tract of land and defendant association for six or seven months each year for thirteen years.

**Am Jur 2d, Damages §§ 32, 56; Restitution and Implied Contracts § 166.**

Judge GREENE concurring in part and dissenting in part.

APPEAL by plaintiff and defendants from judgment entered 22 December 1988 by *Briggs, Judge,* in YANCEY County Superior Court. Heard in the Court of Appeals 8 November 1989.

Plaintiff, a seventy-six-year-old widow, brought this action to recover of the individual defendants (and the corporate defendant, which they allegedly controlled and acted through) for breaching their contract to buy and develop as equal partners two tracts of real property in Yancey County. Several theories for recovery were alleged, including *quantum meruit*, for the value of her services in discovering, managing and developing the two tracts. Following a trial in which only the plaintiff offered evidence and defendant The Homestead Preservation Association, the legal titleholder of one tract, was eliminated by a directed verdict, the jury answered the issues against the individual defendants as follows:

1. Did the plaintiff, Dorothy L. M. Potter, and the defendants, William Bretan and Herman Bretan, enter into a contract whereby plaintiff Dorothy L. M. Potter was to receive one-fourth (¼) of the net profits from the sale of the 400-acre tract of land?

ANSWER: Yes

2. Did the defendants Herman Bretan and William Bretan breach said contract?

ANSWER: Yes

3. What amount is plaintiff, Dorothy L. M. Potter, entitled to receive from defendants William Bretan and Herman Bretan for said breach?

ANSWER: $12,500

4. Did the plaintiff, Dorothy L. M. Potter, render valuable services to the defendants, William Bretan and Herman Bretan relative to the 700-acre tract of land?

ANSWER: Yes

5. What amount is the plaintiff, Dorothy L. M. Potter, entitled to recover from the defendants William Bretan and Herman Bretan?

ANSWER: $200,000.00

Except for reducing the damages awarded by Issue 5 to $110,000, the trial court denied defendants' motions concerning the verdict and entered judgment thereon.

Plaintiff's evidence, the sufficiency of which is determinative of the appeal, was to the following effect: Plaintiff, a Florida real estate agent, has spent the summers in Yancey County since 1956. Herman Bretan, a Florida lawyer and friend who had handled her late husband's estate, prepared her will, and visited in her home asked her to let him know if she found any good property in Yancey County for sale. In the fall of 1970 plaintiff discovered two tracts of land in Yancey County that were for sale; one tract of about 400 acres was relatively level, the other, about 700 acres, was rough and hilly. Plaintiff negotiated a price of $80,000 for the larger tract and $85,000 for the smaller one and notified Herman Bretan. A few months later she, Herman Bretan, William Bretan — his brother and a Florida real estate agent and businessman — and Milton Wind, a Florida investor obtained by Herman Bretan, agreed to purchase and develop both tracts on a partnership basis with each having a one-fourth interest in the property and the profits from its sale. Each partner had separate responsibilities: Mr. Wind was to put up the money needed; Herman Bretan was to handle "the legal part"; William Bretan was to use his sales force to locate prospective buyers of lots or memberships; and plaintiff was to look after the property, maintain, improve and show it, and interest people in buying lots or memberships. When the purchase was made on 15 April 1971, the deeds were put in the name of the Caisse

Corporation, a Florida company defendant Herman Bretan said was his "holding corporation."

In regard to the 400-acre tract plaintiff generally looked after it, kept people from cutting timber or digging roots on it, and cut out some home sites. The tract was damaged by a flood in November 1977 and plaintiff supervised its restoration. According to William Bretan, the tract was sold in 1983 for $260,000, though earlier he had obtained a $400,000 offer that fell through when the financing it was contingent upon was not granted. In a meeting with plaintiff and Wind on 31 December 1983 he produced a hand-written slip of paper that undertook to account for the $260,000 sale proceeds as follows:

| | |
|---|---|
| Mortgage Payoff | $52,000 |
| Repayment to Herman Bretan | $68,000 |
| Restoration of Guest House | $35,000 |
| Timber Cruise | $10,000 |
| Finders Fee to William Bretan | $25,000 |
| War Chest (Slush Fund) | $40,000 |

Neither plaintiff nor Wind accepted this undocumented and unexplained accounting, because Herman Bretan, though expected, was not there and they wanted him to explain, *inter alia*, the "repayment" to him, since they knew of no payment that he had made; whether the repayment included his share of the profit; the "finders fee" paid William Bretan and the war chest or slush fund disbursement. Plaintiff attempted to contact Herman Bretan several times during the following months but without success and he never explained any of the deductions or accounted to her for any of the disbursements.

The 700-acre tract was handled differently. In 1971 Herman Bretan formed a non-profit North Carolina corporation, The Homestead Preservation Association, and the property was deeded to it by the Caisse Corporation. They agreed to divide the tract into 100 single acre circular lots and leave the rest of the property for roads and common ground. Proceeds from the sale of lots and memberships were to be deposited into an account denominated the "Dorothy Potter Trust Account." Plaintiff was made president of the corporation, Herman Bretan secretary, and William Bretan treasurer. The Bretans controlled the Association; all of its affairs, including the trust account, were handled out of Herman Bretan's office. After the association between plaintiff and defendants ter-

minated, plaintiff and Wind learned of several irregularities in the handling of those funds: One was that a mortgage on the other tract was paid out of membership payments that were supposed to be used in developing this tract; another was that William Bretan offset bills his business owed certain suppliers against what the suppliers owed the Association on lots or memberships they had bought. Defendants admitted that forty memberships were sold for prices ranging between $5,000 and $15,000 each for which the buyer received a one acre lot; but many of the memberships and lots had been bought back by the Association. The property in this tract still held by the Association is worth $784,600. Plaintiff spent six to seven months every spring and summer for thirteen years showing and developing the tract and promoting the property and the Association. *Inter alia*, she worked on houses, landscaped building sites, cooked for and entertained workers and prospective investors, supervised the move of a church building onto the property, and otherwise worked to improve the property. On 20 June 1984 in a letter to the Bretans plaintiff, as president of the Association, requested that a meeting be called and held on the property and a *full* accounting given of its property and funds. Receiving no response, on 24 August 1984 she again wrote defendant Herman Bretan asking for a list of the Association members and their mailing addresses, and stating that as president she was calling for the annual meeting to be held the Friday after Thanksgiving at the Hannum house on the 700-acre tract. Herman Bretan responded by a letter dated 27 August 1984 advising her that she had been relieved of the office of president of the Association by the board of directors, and that she had been removed as a director by action of the membership. Plaintiff has not been paid anything under the partnership agreement either from profits, for services rendered, or for her interest in either tract; and no accounting of the Association's funds, property or activities has been made to plaintiff by either the Association or the individual defendants.

Moore, Lindsay & True, by Stephen P. Lindsay, for plaintiff appellant-appellee.

Norris and Peterson, by Allen J. Peterson and Staunton Norris, for defendant appellees-appellants.

**POTTER v. HOMESTEAD PRESERVATION ASSN.**

[97 N.C. App. 454 (1990)]

PHILLIPS, Judge.

In orally arguing this appeal the individual defendants contended for the first time that the verdict on Issues 4 and 5 cannot stand because any services plaintiff performed in regard to the 700-acre tract were necessarily for the benefit of the owner, The Homestead Preservation Association, which is no longer in the case. This issue was not raised by exception at trial, nor is it the subject of an assignment of error. Rule 10(b), N.C. Rules of Appellate Procedure. The closest that defendants came to raising the question was when Issue 4, as to whether plaintiff rendered "valuable services to the defendants, William Bretan and Herman Bretan relative to the 700-acre tract of land," was objected to during the charge conference; but in doing so counsel stated, "Our objection specifically is putting them together." This meant, of course, only that defendants wanted a separate issue for each defendant; it did not mean, as now argued, that their position was that no services of benefit to them were indicated by the evidence. Having tried the case on that basis, the appeal must follow the same course. *Walker v. Walker*, 238 N.C. 299, 77 S.E.2d 715 (1953). But the contention is baseless in any event. For plaintiff alleged that she agreed to manage the tracts in return for one-fourth interest in the tracts and the profits derived from their sale — an allegation essentially admitted by defendants who asserted in their counterclaim that "[p]laintiff agreed with the Defendants to oversee and manage the [two tracts] . . . for which she was to receive twenty-five percent (25%) of the profits" from their sale; and she specifically asserted that defendants dominated the corporation, operated it as their personal business, controlled and misappropriated its assets, failed to have meetings and account for its property, and that her services were for their benefit. These allegations that the Association in effect was but the tool or *alter ego* of the defendants were supported by evidence that though plaintiff had been named its president, defendants handled the corporation's business, refused to account for its funds, spent them without consulting her, and summarily removed her from both office and the Association when she undertook to call a meeting and request an accounting. The Association's servient status as understood by the parties and the court is further indicated by the fact that in getting the personal judgment against them stayed pending the appeal the defendants were permitted to give bond "with the 700-acre tract of land owned by the Defendant Homestead Preservation

Association." And, of course, the evidence that the parties were partners or joint venturers in buying and developing the tract and that the defendants now treat it as their own is also evidence that plaintiff's services in regard to the property benefited them.

Defendants' arguments made in their brief can be consolidated into three contentions — that an issue as to the three-year statute of limitations barring the claim should have been submitted; and that the evidence does not support either of the damages awards approved by the court. Neither contention has merit and each can be effectively answered by merely stating the evidence bearing thereon.

[1] First, as to the three-year statute of limitations contention, the evidence shows without contradiction that it was not until 27 August 1984 that plaintiff was notified by Herman Bretan that her association with the defendants had been terminated, and this suit was filed on 26 August 1987. The argument that her cause of action accrued on 31 December 1983 when she did not accept William Bretan's undocumented "accounting" of the sale proceeds from the 400-acre tract has no basis. For the evidence is without contradiction that after that meeting, except for plaintiff's effort to obtain Herman Bretan's explanation of William Bretan's accounting of the 400-acre sale proceeds and to call a meeting and obtain an accounting in regard to the 700-acre tract, the relationship of the parties and plaintiff's services continued as before and that she was in Yancey County looking after the property and receiving complaints from Association members when Herman Bretan's letter was received. Nothing in the evidence indicates that before then she had reason to know that the unexplained matters involving the 400-acre tract would not be satisfactorily explained and adjusted if appropriate, or that the agreement as to the other tract would not be complied with or that their relationship had been or would be terminated. The only support for defendants' argument is that William Bretan's purported accounting and Herman Bretan's failure to contact her caused her to suspect that defendants were not going to abide by the agreement; but legal actions accrue upon fact, not suspicion.

[2] Second, as to the contention concerning the $12,500 verdict for lost profits from the sale of the 400-acre tract, the evidence not only supports that award, it would support one much higher. For William Bretan's report that the property was sold for

$260,000 and the expenses and obligations amounted to $230,000 is evidence that a profit of at least $30,000 remained for division if all of the deductions claimed were authorized; and the agreement testified to is evidence that neither the $25,000 finders fee retained by William Bretan nor the $68,000 "repayment" to Herman Bretan were authorized since under it William Bretan's duty was to make sales, and Wind was required to supply all the money needed for the venture, and testified that he did so.

[3] The main thrust of defendants' final argument—that the evidence does not tend to show that the services plaintiff rendered in regard to the 700-acre tract are worth $110,000—is that neither plaintiff nor anyone else put a dollar value on the services and that she could not estimate the number of days or hours that she worked. The evidence, though, is not that she performed random errands or services on an hourly or daily basis. The evidence is that the agreement of the parties required her to manage, supervise, look after, improve and promote the tract and the Association for six or seven months each year for thirteen years, that she was there on the property "seven days a week for . . . many, many times," and was "always available" to do whatever was required of her in looking after and improving the property and in dealing with Association members, prospects and others. Thus, her services and responsibilities were limited only by the calender and should be paid for on that basis. The law does not require courts or jurors to be oblivious to what is commonly known by others, and it is a matter of common knowledge that the nation has a minimum wage law; that virtually no one, including the unskilled, works for less than that; that any kind of regular service performed over a long period of time has substantial value; and that reliable managerial, caretaking and promotional services requiring constancy, initiative, judgment, and the ability to deal with and direct others is several times more valuable still. The $110,000 award that the court reduced the verdict to is well supported by the evidence and these matters of common knowledge; for it is less than $8,500 for each of the thirteen six or seven month periods that, according to the evidence, this experienced real estate manager spent looking after, improving and promoting a large and valuable tract of land, and it is little if any more than the cost of an unskilled custodian's or night watchman's services for a like period. Whether the evidence also supports the jury's evaluation of the services, as plaintiff argues, is not before us and will not

be determined since her appeal from the reduction of the award was not perfected.

Thus, in the trial as conducted no error prejudicial to the defendants has been made to appear. And we note that if the issue as to the 700-acre tract had been tried on the joint venture contract theory as the court might have directed, instead of *quantum meruit*, that the result could have been less satisfactory to the defendants still. For though *quantum meruit* is appropriate where one has benefited from another's services under circumstances that in good conscience call for payment, *Thormer v. Lexington Mail Order Co.*, 241 N.C. 249, 252, 85 S.E.2d 140, 143 (1954), *citing Sanders v. Ragan*, 172 N.C. 612, 90 S.E. 777 (1916), the relief is limited to the value of services rendered and it is usually resorted to because the parties had no enforceable contract. In this case an apparently enforceable contract was pleaded and testified to and if the trial had been on that basis the value of plaintiff's services would have been immaterial, the property might have been subjected to a trust for the benefit of the contracting parties, and its value could have been a major issue. *Fortune v. First Union National Bank*, 323 N.C. 146, 371 S.E.2d 483 (1988); *Newby v. Atlantic Coast Realty Co.*, 182 N.C. 34, 108 S.E. 323 (1921). Why the trial was not on that basis does not appear and is not our concern since neither party assigned it as error.

No error.

Judge BECTON concurs.

Judge GREENE concurs in part and dissents in part.

(Former Judge BECTON concurred in the result reached in this case prior to 9 February 1990.)

Judge GREENE concurring in part and dissenting in part.

I disagree with the majority's conclusion of no error in the trial court's presentation of the *quantum meruit* issue to the jury. "Under a contract implied in law, the measure of recovery is *quantum meruit*, the reasonable value of materials and services rendered by the plaintiff that are 'accepted and appropriated by the defendant.'" *Ellis Jones, Inc. v. Western Waterproofing Co.*, 66 N.C. App. 641, 647, 312 S.E.2d 215, 218 (1984) (quoting *Thormer v.*

POTTER v. HOMESTEAD PRESERVATION ASSN.

[97 N.C. App. 454 (1990)]

*Lexington Mail Order Co.*, 241 N.C. 249, 252, 85 S.E.2d 140, 143 (1954)). " 'The burden is always upon the complaining party to establish by evidence such facts as will furnish a basis for [the] assessment [of reasonable value of services rendered and accepted], according to some definite and legal rule.' " *Cline v. Cline*, 258 N.C. 295, 300, 128 S.E.2d 401, 404 (1962) (quoting *Lieb v. Mayer*, 244 N.C. 613, 616, 94 S.E.2d 658, 660 (1956)). The plaintiff must produce evidence showing reasonable value or worth " 'based on the time and labor expended, skill, knowledge and experience involved, and other attendant circumstances. . . .' " *Paxton v. O.P.F., Inc.*, 64 N.C. App. 130, 134, 306 S.E.2d 527, 530 (1983) (quoting *Turner v. Marsh Furniture Co.*, 217 N.C. 695, 697, 9 S.E.2d 379, 380 (1940)). "The reasonable value of services rendered is an objective measure and 'is determined largely by the nature of the work and the customary rate of pay for such work in the community and at the time the work was performed.' " *Hood v. Faulkner*, 47 N.C. App. 611, 617, 267 S.E.2d 704, 707 (1980) (quoting 66 Am.Jur. 2d *Restitution and Implied Contracts* § 28, at 973 (1973)).

The plaintiff's evidence of reasonable value of the services rendered consisted of extremely general statements about the nature of the services and of a time period during which they allegedly occurred. The plaintiff offered no evidence as to the actual time spent, her level of skill or knowledge, or the customary rate of pay for such services. Thus the jury did not have sufficient evidence before it to determine the reasonable value of any services provided by the plaintiff. The majority in asserting that the reasonable value of plaintiff's services was proven by the "common knowledge that the nation has a minimum wage law . . ." creates new law in North Carolina, and I do not find it to be consistent with previous statements of this court or the Supreme Court. In addition, the majority's assumption that the plaintiff provided "reliable managerial, care taking and promotional services [which required] constancy, initiative, judgment, and the ability to deal with and direct others . . ." is a mere conclusion and is unsupported by the evidence.

Furthermore, the plaintiff provided no evidence as to the extent her services were "accepted and appropriated" by the defendants. Thus, even if the plaintiff had proven the reasonable value of her services, the jury would have no evidence to determine whether she merited compensation under the *quantum meruit* theory.

I join the majority in finding no error in all issues other than *quantum meruit.* I would reverse the award of damages based on *quantum meruit* and remand for a granting of nominal damages on this issue. *See Paxton,* 64 N.C. App. at 134, 306 S.E.2d at 530.